**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAVI DARBHA, | ) | |
| | ) | Case No. 10 C 2581 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| CAPGEMINI AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CAPGEMINI AMERICA INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**CAPGEMINI AMERICA, INC.**

Gerald D. Silver, Esq.
(Admitted Pro Hac Vice)
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
Phone: (212) 408-5260
Fax: (646) 710-5260

Cheryl Tama Oblander, Esq.
Nathan D. Larsen, Esq.
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street
Suite 1800
Chicago, IL 60602
Phone: (312) 444-9660
Fax: (312) 444-9287

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A.    The Parties. ...............................................................................................................2

    B.    Darbha Joins The Astellas Account. ......................................................................2

    C.    Darbha's Performance On The Astellas Account.....................................................3

    D.    Darbha Is Placed On A Performance Improvement Plan. .......................................4

    E.    Astellas Transfers The R&D Portion Of The Astellas Account To
        Another Firm...........................................................................................................5

    F.    Darbha Attempts To Find A New Position At Capgemini But Cannot Do So
        Because He Does Not Have Expertise In SAP Software, And Will
        Not Relocate...........................................................................................................5

    G.    After Realizing He Will Be Terminated, Darbha For The First Time Complains
        Of Discrimination. .................................................................................................6

    H.    Capgemini Continues To Help Darbha Try To Find Another Position With The
        Company, To No Avail............................................................................................7

    I.    Darbha Files An EEOC Charge, And Then Commences This Action. ...................8

ARGUMENT...............................................................................................................................8

I.    SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S
    NATIONAL ORIGIN AND RACE CLAIMS. .................................................................8

    A.    Darbha Fails To Establish Direct Evidence Of Discrimination..............................8

    B.    Darbha Fails To Establish A Prima Facie Case Of Discrimination.......................9

        1.    Darbha Cannot Show He Was Qualified. .................................................10

        2.    Darbha Cannot Show That Those Outside His Protected Class Were
            Treated More Favorably Than Those In His Protected Class...................10

i

|  | 3. | Darbha Fails To Establish A Prima Facie Case With Regard To Claims Unrelated To His Termination. ...............................................................11 |

|  | C. | In Any Event, Capgemini Sets Forth A Legitimate, Non-Discriminatory Reason For The Termination And Darbha Cannot Show Pretext.............12 |

II. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S AGE DISCRIMINATION CLAIM. .................................................................13

III. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S RETALIATION CLAIM. ...........................................................................14

IV. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIMS. ..................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Akinbode v. Motorola, Inc.,
   2007 WL 2316951 (N.D. Ill. August 13, 2007) ...............................................................13, 15

Atkins v. Coca Cola Enterprises, Inc.,
   2007 WL 4219196 (N.D. Ill. November 28, 2007) .......................................................11, 12

Clark County School District v. Breeden,
   532 U.S. 268, 121 S. Ct. 1508 (2001).......................................................................................14

Derosena v. General Board of Pensions & Health Benefits of the United Methodist
   Church, Inc.,
   560 F. Supp. 2d 652 (N.D. Ill. 2008) .......................................................................................14

Dooley v. Abbott Laboratories,
   2009 WL 1033600 (N.D. Ill. April 17, 2009) ...........................................................................9

Lasisi v. Motorola, Inc.,
   2005 WL 2240109 (N.D. Ill. September 14, 2005) ..................................................................11

Masupha v. Mineta,
   551 F. Supp. 2d 730 (N.D. Ill. 2008) ..........................................................................12, 14, 15

McDonnell Douglas Corp. v. Green,
   411 U.S. 792, 93 S. Ct. 1817 (1973)......................................................................................8, 9

Mokry v. Partylite Worldwide, Inc.,
   2009 WL 2588888 (N.D. Ill. August 20, 2009) ..........................................................10, 11, 15

Singh v. Holy Cross Hospital,
   2007 WL 781734 (N.D. Ill. March 13, 2007), aff'd in part, vacated in part on other
   grounds, 252 Fed. Appx. 89 (7th Cir. 2007) .............................................................9, 12, 13

Tomanovich v. City of Indianapolis,
   457 F.3d 656 (7th Cir. 2006) ...................................................................................................15

STATUTES

Fed. R. Civ. P. 56.........................................................................................................................1

Title VII of the Civil Rights Act of 1964......................................................................................1

iii

## DEFENDANT CAPGEMINI AMERICA INC.'S MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Capgemini America, Inc. ("Capgemini") submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the claims of plaintiff Ravi Darbha ("Darbha" or "Plaintiff") of (i) discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") based on national origin (India) and race (Asian), (ii) discrimination under the Age Discrimination Employment Act ("ADEA") based on age (43),[1] (iii) retaliation under Title VII, and (iv) harassment/hostile work environment under Title VII.

## PRELIMINARY STATEMENT

Capgemini terminated Darbha's employment because Capgemini's client decided to transfer the lone technology project Darbha was working on to another technology consulting company, and there were no other open positions at Capgemini for which Darbha was qualified. Indeed, Darbha admits that, at the time of his termination, the open positions at Capgemini required expertise in SAP software, which Darbha admits he did not have.

Darbha admits he has no knowledge or evidence of any particular person discriminating against him in any way. Further, of the eight other technology consultants working on the subject project the client transferred to another company, two other consultants were Indian/Asian and five of the consultants were over 40, and they were all retained by Capgemini. Thus, Darbha cannot establish a _prima facie_ case. In any event, Capgemini has set forth a legitimate non-discriminatory reason for the termination (the client account was transferred to

---

[1] All ages set forth herein are as of the time of Darbha's employment termination from Capgemini on May 1, 2009. "Silver Aff." refers to the Affidavit of Gerry Silver, Esq., sworn to on August 18, 2011 and submitted herewith. "Ex." refers to exhibits to the Silver Aff. "Darbha Tr." refers to the transcript of the deposition of Darbha conducted on April 4, 2011, a copy of which is annexed to the Silver Aff. as Exs. 1a (pp. 1-120) and 1b (pp. 121-232). Darbha did not depose any Capgemini witnesses.

another consulting firm and Darbha did not have the SAP experience to fill the open positions), and Darbha cannot show pretext. (See Points I and II, infra).

Darbha's retaliation claim fails due to an utter lack of evidence and because Darbha did not even complain of discrimination until months after he was told that the client project had been transferred to another technology firm and that he would be terminated if he could not find another position with Capgemini. Moreover, even after Darbha made vague allegations of discrimination -- which he did not link to any protected status -- Darbha admits that Capgemini tried to find him another role with the company. (See Point III, infra). Further, Darbha presents no evidence of a hostile work environment or harassment (see Point IV, infra).

## STATEMENT OF FACTS

### A.    The Parties.

Capgemini provides, inter alia, information technology ("IT") and software outsourcing services. Capgemini's outsourcing employees generally work full-time on one client account at a time. (See Defendant's Verified Second Amended Responses to Plaintiff's First Set of Interrogatories ("Capgemini's Interrogatory Responses"), which is annexed to the Silver Aff. at Ex. 40, at Response No. 1 p. 3). Darbha is a software consultant specializing in the software language Java (Darbha Tr. 6-9, 202). Darbha routinely moves from employer to employer as technology projects end (Darbha Tr. 6-8, 16, 18-19, 20).

### B.    Darbha Joins The Astellas Account.

In or about July 2006, Darbha joined an IT outsourcing engagement Capgemini had with Astellas, a pharmaceutical company in Illinois (Darbha Tr. 21, 26). Darbha was on Capgemini's "R&D Team" on the Astellas account, which supported software applications relating to Astellas' research and development efforts (Darbha Tr. 26-27). Darbha focused primarily on the Argus application, which captures complaints and other "incidents" from subjects of trial drugs and

reports them to the FDA and other regulatory authorities (Darbha Tr. 31, 33).

Glenn Johnson ("Johnson") was the Applications Delivery Manager on Astellas in charge of the R&D Team and other Capgemini software teams supporting other divisions at Astellas. Darbha reported directly to R&D Team Project Manager Hal Malen ("Malen"), who reported to Johnson. (Darbha Tr. 209, 23-26; Ex. 40 at 1 p. 4). Ted Levine ("Levine") was the Account Executive for Capgemini who managed the overall Astellas relationship, and Samantha Linsky ("Linsky") was Capgemini's Human Resources ("HR") Director assigned to the Astellas account (Darbha Tr. 28).[2]

## C.     Darbha's Performance On The Astellas Account.

In Darbha's 2007 Mid-Year Review, Malen wrote that Darbha "sometimes give[s] the impression of not working with the team - not my responsibility", and that Darbha should more proactively monitor potential problems (Ex. 2). Further, in discussing the review with Darbha, Malen told Darbha that it sometimes "sounds that you [Darbha] don't want to work" (Darbha Tr. 29-31). Darbha does not believe that Malen discriminated against him (Tr. 25-26).

Dan Page ("Page") became the Project Manager for the R&D team in January 2008 (Tr. 25-26). In addition to Johnson, Page and Darbha, approximately six other Capgemini consultants performed certain R&D duties (Darbha Tr. 28; Ex. 37), namely Angela Brent ("Brent"), Mohammed Momin ("Momin"), Kiran Nallagonda ("Nallagonda"), Pete Bucchianeri ("Bucchianeri"), Gennady Sergiyenko ("Sergiyenko"), and Aaron Steen ("Steen") (Darbha Tr. 43; Ex. 37). Brent, Momin and Steen had roles that were more client-facing and were referred to

---

[2]     Linsky was involved in all relevant decision-making activities regarding Darbha and verified Capgemini's Responses to Interrogatories (see Ex. 40 at Responses 1 p. 4, 2, p. 5, 3 p. 7, 8 p. 10, 9 p. 11, 17 p. 17, 18 p. 18, 19 p. 19, 30 p. 28 and 36 pp. 32-33).

as "Domain Leads" while Bucchianeri, Sergiyenko, Nallagonda and Darbha were analysts (Ex. 4 p. CG 134-35; Darbha Tr. 38, 185-86). Darbha did not report to any Domain Leads but rather reported directly to Page, and Darbha also dealt directly with the client at Astellas (Darbha Tr. 39-40, 44).

In his 2008 Mid-Year Review, Page discussed certain deficiencies in Darbha's performance that were similar to those pointed out by Malen, such as that Darbha would "refuse to help with any critical applications issues", that Darbha would "rely [ ] on others to make it their issue" as well as that Darbha was failing to train a back-up for his absence and/or emergencies (Darbha Tr. 57-60; Ex. 5). Subsequently, in the mid-Summer of 2008, there was an emergency where the Argus application was "down" and Darbha was called upon to address the situation. Darbha refused to take a break from lunch to attempt to fix the problem. (Darbha Tr. 63-64, Ex. 6). Around the same time, there was an Argus hardware failure, where a database server was out for a week, and Darbha took no steps to escalate the issue to management because he felt that because it was a hardware issue relating to Argus, as opposed to purely an Argus software issue, it was not his responsibility to do so (Darbha Tr. 64-67). Thereafter, Astellas complained to Page that Darbha was not being accountable for the Argus application (Darbha Tr. 71; Ex. 6). Further, Darbha had not trained a back-up (Darbha Tr. 79-80; Ex. 7).

**D.** **Darbha Is Placed On A Performance Improvement Plan.**

Accordingly, on September 9, 2008, Johnson and Page put Darbha on a Performance Improvement Plan (a "PIP") (Darbha Tr. 76; Exs. 7, 8). Among other deficiencies Johnson and Page asked Darbha to improve upon, they again requested that Darbha train a back-up, escalate issues, and be more accountable (Darbha Tr. 79-80; Exs. 7, 8).

Page met with Darbha regularly to address Darbha's progress on the PIP (Darbha Tr. 116-17; Exs. 11, 15, 19). By October 2008, Page acknowledged that Darbha had successfully

4

completed nearly all the items on the PIP, other than fully training a back-up, which was only 60% complete, and better escalating and communicating issues to Capgemini management and the client, which was only 20% complete (Darbha Tr. 101; Exs. 9 and 11).  By January 2009, Darbha had fully completed the PIP and the PIP was closed (Darbha Tr. 102).   However, Page gave Darbha a "4-Needs Improvement" rating on his 2008 Year-End Review (Ex. 33).  Page told Darbha that although Darbha had fulfilled the PIP through his efforts in late 2008, the rating reflected his performance throughout the entire year (Darbha Tr. 171-72).

**E.**     **Astellas Transfers The R&D Portion Of The Astellas Account To Another Firm.**

In January 2009, Levine announced that Astellas had decided to transfer the R&D applications away from Capgemini to a new consulting firm, Delta, effective April 30, 2009 (Darbha Tr. 147-48, 151-52; Ex. 20).   Capgemini, including Levine, specifically told the members of the R&D Team, including Darbha and even Page, that they needed to find new positions within Cagpemini by April 30, 2009, or else their employment would be terminated effective May 1, 2009 (Darbha Tr. 149-52, 197; Exs. 20, 40).  Darbha testified that he was told at that meeting "[s]o we [meaning Darbha and the rest of the R&D Team] have to find something with Capgemini or you're done" (Darbha Tr. 149-52; Ex. 20).

**F.**     **Darbha Attempts To Find A New Position At Capgemini But Cannot Do So Because He Does Not Have Expertise In SAP Software, And Will Not Relocate.**

Accordingly, Darbha began looking for a new position within Capgemini (Darbha Tr. 154).  Capgemini HR explained the procedure for trying to find open positions, of which Darbha was already aware from his prior experiences at Capgemini when an account closed and Darbha had to find a new position (Darbha Tr. 16, 18-19, 20, 154).   Darbha went onto Capgemini's internal web-based system to search for open positions.   He "started looking" but "did not find [an opening] with [his] exact skills".  He applied to a number of positions anyway, knowing his

5

employment would end by May 1, 2009 if he did not find another position. (Darbha Tr. 154-55).

Darbha posted his name and skills on the Capgemini internal website, which HR and Project Managers would scan when trying to fill positions and to otherwise staff client engagements across Capgemini (Darbha Tr. 159-60; Ex. 22). In a section asking whether the individual would be willing to relocate to fill a position, Darbha wrote "No" (he lived in Illinois) (Darbha Tr. 160, 163; Ex. 22). Darbha listed his skills as primarily Java. Significantly, he did not list any skills with SAP software (Darbha Tr. 161-62; Ex. 22).

Darbha researched open positions but, could not find any openings for anyone who, like him, primarily specialized in Java technology, i.e., Java/J2EE skills, with no SAP experience (Darbha Tr. 200, 201-02). There were some positions that required a combination of Java and SAP skills, and Darbha applied for those, but he did not have any SAP skills and therefore was "not a complete match" (Darbha Tr. 202). Darbha did not reference SAP skills on his resume and admitted openly that "I do not have SAP skills" (Darbha Tr. 207).

Darbha could not find another position because "[t]here were no open needs for only J2EE [Java] skills but [only needs with Java] linked with SAP experience" (Darbha Tr. 216; Ex. 29) (the open needs were for Java "[a]nd SAP or only SAP"). Darbha readily admitted to Amy Singleton ("Singleton"), the Capgemini HR director responsible for coordinating reassignments of Capgemini employees, that he had no skills in SAP (Darbha Tr. 217 ("I don't have any SAP skills, so that is what I told her")). Indeed, Darbha wrote to Singleton "I do not have SAP skills" and that "[a]s I observe, majority of Cap requirements are for SAP skills" (Ex. 30).

G.    **After Realizing He Will Be Terminated, Darbha For The First Time Complains Of Discrimination.**

On March 19, 2009, Darbha, for the first time, claimed to Page that Capgemini discriminated against and harassed him. Darbha did not give any reasons why he believed he

6

was discriminated against, i.e., whether it was due to race, national origin, or age. (Darbha Tr. 172-73; Ex. 23). Rather, Darbha merely told Page: "Whatever is happening to me, it's -- I think it is discrimination and harassment, so I am making a claim -- verbal claim with him." (Darbha Tr. 172-173; Ex. 23).

On March 25, 2009, Darbha met with Capgemini HR representatives Linsky and Robin Curtis ("Curtis") regarding his discrimination/harassment claim (Ex. 23). Curtis specifically asked Darbha the reasons that Darbha believed he was discriminated against and Darbha stated that he "does not know the reasons" (Ex. 23 at RD40; Darbha Tr. 182, 188). Rather Darbha merely told Linsky and Curtis that because of him being put on the PIP, given a "4" rating on his 2008 Year-End Performance Review and not being a Domain Lead, he thought he was being discriminated against or harassed (Darbha Tr. 179-80) ("because of these incidents, I was discriminated and harassed"). (See also Ex. 23).

**H.    Capgemini Continues To Help Darbha Try To Find Another Position With The Company, To No Avail.**

Singleton and Linsky continued their attempts to find Darbha a role (see, e.g., Exs. 30, 31, 32, 35, 36; Darbha Tr. 210). On one occasion, Darbha was not considered for the Warner Brothers account because he did not have SAP expertise and because he would not relocate to California (Ex. 36). Johnson offered to act as a reference if anyone within Capgemini was considering him and otherwise supported Darbha's efforts (Darbha Tr. 184, 214).

Significantly in Capgemini's attempts to find Darbha a new position, only Darbha's resume, skill sets and other comments that he himself inputted were posted (Ex. 37). Darbha's 2008 performance rating and the fact that he had been on a PIP were not mentioned or readily accessible (Ex. 40 at 36 p. 33, Ex. 37). Darbha concedes that he has no knowledge of anyone rejecting him for a position because he was put on a PIP or because of his performance rating

(Darbha Tr. 210-211 ("I don't know because I don't know what they are doing")).

However, Darbha could not find any new position because the open positions required SAP skills, which Darbha did not have, and/or because he would not relocate. Accordingly, he was terminated effective May 1, 2009 (Ex. 40 at 1 p. 5).

**I.      Darbha Files An EEOC Charge, And Then Commences This Action.**

On July 29, 2009, Darbha filed a Charge of Discrimination with the Equal Opportunity Employment Commission (the "Charge" (Ex. 38)). Darbha claimed that he had been discriminated against because of his race, national origin, and age. He also claimed that he had been retaliated against for "engaging in a protected activity", namely "I was placed on a Performance Improvement Plan and I complained to [Capgemini]. Subsequently I was discharged." (See Ex. 38). Darbha later filed his Complaint, claiming he was discriminated against on the basis of race, national origin and age, and retaliated against. He also claimed he was harassed or subjected to a hostile work environment, and was "paid lower wages." (See Ex. 39).

## ARGUMENT

**I.      SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S NATIONAL ORIGIN AND RACE CLAIMS.**

**A.      Darbha Fails To Establish Direct Evidence Of Discrimination.**

"There are two methods by which to show discrimination on the basis of a protected class: (i) the 'direct method,' whereby the plaintiff shows factual evidence of the defendant's intent to discriminate; or (ii) the indirect, 'burden-shifting' method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)." Singh v. Holy Cross Hospital, 2007 WL 781734, *4 (N.D. Ill. March 13, 2007) (Kendall, J.), aff'd in part, vacated in part on other grounds, 252 Fed. Appx. 89 (7th Cir. 2007) ("Singh").

8

Here, Darbha has not even attempted to show direct evidence of discrimination. Indeed, he cannot do so given his admissions in his deposition that he is unaware of any such direct evidence (Darbha Tr. 220, 223-24, 225-26). Darbha never heard anyone say anything that would cause him to believe he was being discriminated against because of his national origin or race (Darbha Tr. 220). Darbha concedes that he does not believe, and that he is not aware of any specific facts indicating that, Johnson, Linsky, Page, or Singleton discriminated against him (Darbha Tr. 223-24). Indeed, he is not aware of any "specific person's name" who discriminated against him (Darbha Tr. 223, 225-26). Thus, Darbha does not and cannot point to any "admission by the decision-maker that he acted based upon the prohibited animus" or any "convincing mosaic" of evidence of intentional discrimination. Singh, 2007 WL 781734 at *4.

**B.**    **Darbha Fails To Establish A Prima Facie Case Of Discrimination.**

"[W]hen a plaintiff lacks direct evidence of discriminatory motive, courts apply the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. at 802-04." Singh, 2007 WL 781734 at *5. "Under the 'indirect method' framework established by the Supreme Court in McDonnell Douglas, [a plaintiff] may defeat summary judgment via indirect evidence if he can establish a prima facie case of [ ] discrimination by showing that: (1) he belongs to a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer than he was." Singh, 2007 WL 781734 at *5. When plaintiff is seeking a new position, the plaintiff must show that he was qualified for the position sought. Dooley v. Abbott Laboratories, 2009 WL 1033600, *10 (N.D. Ill. April 17, 2009) (Kendall, J.) (when employee did not meet employer's requirements for position, no prima facie case); Mokry v. Partylite Worldwide, Inc., 2009 WL 2588888, *4 (N.D. Ill. August 20, 2009) (Kendall, J.) (same).

9

1.    **Darbha Cannot Show He Was Qualified.**

Darbha cannot show that he was qualified for any open position. There is no dispute that Astellas transferred the R&D project, including, the Argus application that Darbha was primarily working on, to Delta and therefore that role no longer existed (see, e.g., Ex. 20, Ex. 40 at 1 p. 4). Further, Darbha admits that the open roles at Capgemini required SAP expertise, which Darbha did not have (Darbha Tr. 201-02, 207, 216, 217; Exs. 29, 30).

2.    **Darbha Cannot Show That Those Outside His Protected Class Were Treated More Favorably Than Those In His Protected Class.**

There were nine Capgemini employees on the Astellas R&D team. Five were initially considered for potential termination as a result of Capgemini losing the Astellas R&D work, including Page and Sergiyenko (both Caucasian). Also, initially considered were Brent (African-American), Nallagonda, who is Indian/Asian, and Darbha. Hence, just as many Caucasians were initially considered for potential reduction as those who were Indian/Asian (two each), one of whom was Darbha's direct supervisor, Page. (See Ex. 37; Darbha Tr. 220).

With regard to the four members of the R&D team who were not initially considered for potential termination, one of whom is Momin, who is Indian/Asian (see Exs. 37, 45). He provided different services to Astellas in addition to those related to R&D and Astellas specifically asked that he remain on the account performing such services, as well as to lead the transition to Delta. (Exs. 37, 41). Similarly, Johnson, Bucchianeri and Steen, all Caucasian, provided services to Astellas outside of the R&D context and therefore were not considered for termination (Ex. 37).

Most significantly, two of the Indian/Asians on the R&D Account, Nallagonda and Momin, were retained beyond May 1, 2009, and one other non-Caucasian, Brent (African-American), was retained as well (Exs. 37, 45). Thus, Darbha cannot show that those in his

10

protected class (Indian/Asian) were treated less favorably or differently.

**3.** **Darbha Fails To Establish A Prima Facie Case With Regard To Claims Unrelated To His Termination.**

To the extent that Darbha is claiming that he was discriminated against by being put on a PIP, receiving a negative 2008 Performance Review, through allegedly unequal pay, or by not being a Domain Lead, Darbha fails to state a prima facie case with regard to those allegations. First of all, for the reasons set forth above, Darbha cannot show any evidence of discrimination.

Further, it is well established that being placed on a PIP or receiving a negative performance review, without more, does not constitute an "adverse employment action [ ] as it is well established that negative performance evaluations alone are insufficient to satisfy this element", even when an employee claims his role at the Company was limited as a result of his being placed on the PIP. Lasisi v. Motorola, Inc., 2005 WL 2240109, *3 n.2 (N.D. Ill. September 14, 2005); Mokry, 2009 WL 2588888 at *12 (same). Further, Darbha completed his PIP three months prior to his termination and hence it was a non-event.

Moreover, Darbha's claim that he was discriminated against by being put on a PIP is time-barred because he was put on the PIP on September 9, 2008, over 300 days before he filed his Charge on July 29, 2009. Mokry, 2009 WL 2588888 at *7 ("[a] claim of discrimination is time-barred if the plaintiff does not file a charge of discrimination within 300 days after the alleged unlawful employment practice occurred"). To the extent Darbha is claiming discrimination based on unequal pay, that claim is barred because it is not mentioned in the Charge. Atkins v. Coca Cola Enterprises, Inc., 2007 WL 4219196, *7 (N.D. Ill. November 28, 2007) (Kendall, J.) (claims should be dismissed with prejudice when "they fall outside the scope of the EEOC charge."). Further, Darbha cannot establish a prima facie case as he is unaware of any facts indicating that he was paid lower wages because of his national origin or race (Tr. 231).

11

Indeed, Momin and Nallagonda were paid the most on the R&D team (Ex. 43).

Finally, to the extent Darbha is claiming that he was discriminated against by not being a Domain Lead, this is also outside the scope of the Charge and is therefore barred. See Atkins, 2007 WL 4219196 at *7. Further, "Domain Lead" was not even an official title within Capgemini. For example, although Steen was a Domain Lead and Darbha and Bucchianeri were not, they were all considered Senior Consultants within the Capgemini hierarchy. Further, Darbha's salary was higher than that of Steen, who was a Domain Lead. (Ex. 43).

### C. In Any Event, Capgemini Sets Forth A Legitimate, Non-Discriminatory Reason For The Termination And Darbha Cannot Show Pretext.

"If [plaintiff] produces this initial evidence [of a prima facie case], the burden shifts to [defendant] to show that a legitimate, non-discriminatory reason existed for the adverse action against him." Singh, 2007 WL 781734 at *5. "If [defendant] can show such a reason, then the burden shifts back to [plaintiff] to produce evidence suggesting that the proferred reason is merely a pretext for discrimination." Singh, 2007 WL 781734 at *5.

Capgemini has provided a legitimate, non-discriminatory basis for its decision and Darbha cannot meet his burden to present evidence that the stated reason is pretextual. "Pretext means an explanation that is dishonest." Singh, 2007 WL 781734 at *7; Masupha v. Mineta, 551 F. Supp. 2d 730, 737 (N.D. Ill. 2008) (Kendall, J.) ("pretext is a lie, specifically a phony reason for some action") (internal quotation marks omitted). "Courts are not concerned with whether or not the employer's actions were mistaken, ill considered or foolish, so long as the employer honestly believed those reasons." Masupha, 551 F. Supp. 2d at 741.

Here, as set forth above, Darbha was terminated because Astellas transferred the R&D applications Darbha was working on, including the Argus application, to Delta and therefore Darbha's role no longer existed. Further, as Darbha admits, the open roles required SAP

12

experience which Darhba did not have.  He cannot show pretext.

To the contrary, the circumstances demonstrate lack of pretext.   Johnson had been on the Astellas account since Darbha joined in mid-2006.   It defies logic that he would suddenly develop an aversion to Darbha's race or national origin.   See, e.g., Akinbode v. Motorola, Inc., 2007 WL 2316951, *8 (N.D. Ill. August 13, 2007) (Kendall, J.) (no pretext when supervisor worked with plaintiff for some time and "was aware of his accent, race, color and national origin from the outset").  Further, Capgemini made numerous efforts to find another role for Darbha. Singh, 2007 WL 781734 at *8 (attempts to place plaintiff refute claim of pretext).

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S AGE DISCRIMINATION CLAIM.

Courts analyze "[a plaintiff's] claim for discrimination on the basis of age in the same manner as his claim for discrimination on the basis of race, color and national origin." Akinbode, 2007 WL 2316951 at *12.   Darbha's age discrimination claim fails for all the same reasons his claims based on national origin and race fail (see Point I, supra).

Darbha never heard of anyone saying anything about his age that would lead him to believe he was discriminated against for that reason (Darbha Tr. 220). Indeed, Darbha admits that he is not aware of any facts indicating that he was discriminated against because of his age, other than his belief that he was the only member of the R&D team who was over 40 and he was terminated (Darbha Tr. 219).  However, this is simply untrue. Brent, 41, and found a role with the PDG group and remained with Capgemini.  Bucchianeri, 48, also supported a key application for the Astellas legal department, and therefore remained with Capgemini.  Johnson, 43, Page, 43, and Gennedy, 45, all remained with Capgemini as well.   (Ex. 37).

### III.   SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S RETALIATION CLAIM.

To establish retaliation, "the plaintiff must establish that (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action <u>subsequent</u> to this protected activity; and (3) a causal connection between the two." <u>Derosena v. General Board of Pensions & Health Benefits of the United Methodist Church, Inc.</u>, 560 F. Supp. 2d 652, 669 (N.D. Ill. 2008) (Kendall, J.) ("<u>Derosena</u>") (emphasis added); <u>Masupha</u>, 551 F. Supp. 2d at 742 (plaintiff must show that <u>after</u> he complained of discrimination, an adverse employment decision was made).

Darbha found out in January 2009 that he would be terminated if he did not find another role at Capgemini, and he did not complain about discrimination or harassment until March 2009.  Hence, he fails to show that he suffered an adverse employment action <u>subsequent</u> to complaining.  That Darbha's actual termination date occurred after the complaint "is not evidence of causation", as the decision to terminate Darbha's employment if Darbha could not find another role was made well before his complaint.   <u>Derosena</u>, 560 F. Supp. 2d at 672-73; <u>see</u> <u>Clark County School District v. Breeden</u>, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) ("[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").

Further, when Darbha complained about discrimination, he made no mention that he believed it was due to any protected status.  He did not tell Page, Linsky or Curtis that he believed he was being discriminated against due to his national origin, race or age (Ex. 23 at RD40; Darbha Tr. 179-80, 182, 188).  Hence, he did not engage in any protected activity. Indeed, Darbha testified at his deposition that he believes that he was retaliated against because of an "incident" that occurred in 2007, where Darbha gave his password to a contractor, who

went into the production environment at Astellas and caused problems with the system (Darbha Tr. 230). This clearly is not a protected activity. <u>Tomanovich v. City of Indianapolis</u>, 457 F.3d 656, 663 (7th Cir. 2006) ("complaint must indicate the discrimination occurred because of sex, race, national origin or some other protected class"). In any event, even after Darbha's purported complaint, Capgemini, including Linsky and Singleton, continued to help Darbha try to locate another role at Capgemini (<u>see</u>, <u>e.g.</u>, Exs. 30, 31, 32, 35, 36), and Johnson offered to provide a positive reference for anyone within Capgemini considering retaining Darbha (Darbha Tr. 184, 214). This further undercuts any claim of retaliation.

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING DARBHA'S HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIMS.

To establish a claim for harassment or hostile work environment under Title VII or the ADEA "the plaintiff must offer evidence that a supervisor or co-worker harassed [plaintiff] because of a protected characteristic such as [his] race, national origin, gender or age." <u>Mokry</u>, 2009 WL 2588888 at *16; <u>Masupha</u>, 551 F. Supp. 2d at 742 ("[v]ague allegations are not sufficient"). Further, plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule and insult, that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Akinbode</u>, 2007 WL 2316951 at *13 (internal quotation omitted).

Here, Darbha at most claims that he was harassed by being put on a PIP or receiving a negative performance review (Ex. 39), and/or for giving out his password to a contractor. These are not protected acts and are an insufficient basis for a harassment claim. <u>Mokry</u>, 2009 WL 2588888 at *16. Further, these are ordinary workplace events and certainly do not even come close to the level of being so severe and pervasive as to materially alter his working environment and to convert it into an abusive one.

**CONCLUSION**

Based on the foregoing, summary judgment should be awarded dismissing Darbha's claims in their entirety.

Dated:   August 19, 2011

CAPGEMINI AMERICA, INC.

By: /s/ Gerald D. Silver
       One of Its Attorneys

Gerald D. Silver, Esq.
(Admitted Pro Hac Vice)
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
Phone: (212) 408-5260
Fax: (646) 710-5260
gsilver@chadbourne.com

Cheryl Tama Oblander, Esq.
Nathan D. Larsen, Esq.
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street
Suite 1800
Chicago, IL  60602
Phone: (312) 444-9660
Fax: (312) 444-9287
CTama@butlerrubin.com
nlarsen@butlerrubin.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 19, 2011, a copy of the foregoing Defendant Capgemini America Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment was filed electronically with the Court.   The undersigned also certifies that a copy of the foregoing Defendant Capgemini America Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment was served by U.S. First Class Mail, postage paid, at 30 Rockefeller Plaza, New York, NY  10112 on:

Ravi Darbha
1431 Johnson Dr.
Apt. 1024
Buffalo Grove, IL  60089

   /s/ Gerald D. Silver            ____
One of the Attorneys for Defendant